IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BARRINGTON SMITH, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NO. 1:08-CV-2618-BBM |
| THE CITY OF ATLANTA, OFFICER A. ZORN, OFFICER JOHN DOE, in their Individual and Official Capacities, FULTON COUNTY, GEORGIA, and DEPUTY MARSHAL STANLEY, in his Individual and Official Capacities, | |
| Defendants. | |

## O R D E R

This matter is before the court on a Motion for Summary Judgment [Doc. No. 38], filed by Defendants the City of Atlanta ("the City"), Officer A. Zorn ("Officer Zorn"), and Officer John Doe who was identified in discovery responses as Officer Christopher Kitcho ("Officer Kitcho"),[1] as well as a Motion for Summary Judgment [Doc. No. 47] filed by Defendants Fulton County, Georgia, ("Fulton County"), and Stanley Marshall ("Sergeant Marshall").[2] Plaintiff Barrington Smith ("Mr. Smith") has advised that he opposes summary judgment only for his claims against Officer Zorn

---

[1]These Defendants also filed a Motion for Leave to File Excess Pages [Doc. No. 44] for this Motion, which is GRANTED.

[2]The case style on the Complaint lists Deputy Marshal Stanley as a Defendant. However, the correct name should be Sergeant Stanley Marshall. (See Answer at 1 [Doc. No. 3].)

in his individual capacity, and does not oppose any of the other requests for summary judgment. [3]

## I.    Background

On a summary judgment motion, justifiable factual inferences are construed in favor of the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  For this reason, this account makes all justifiable factual inferences in favor of Mr. Smith, and does not constitute findings of fact by the court.[4]

The series of events that gave rise to this lawsuit began during a dispute over a parking space.  During the early morning hours of Sunday, August 26, 2007, Mr. Smith, his wife Sean Hutton ("Ms. Hutton"), and their friend Anna Lasissi ("Ms. Lasissi") were returning to Mr. Smith and Ms. Hutton's apartment after celebrating a birthday at Underground Atlanta.  On their way to the apartment, they saw an empty parking space in front of the building.  They decided to try and move Ms. Lasissi's car from where she initially parked it, to that spot.

---

[3]Mr. Smith also filed a Motion for Leave to File Excess Pages [Doc. No. 48], which is GRANTED.

[4]As an attachment to his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Mr. Smith filed "Objections to Evidence Submitted By Defendants in Support of Motion for Summary Judgment," in which he objects to affidavits and other documents submitted by Defendants. Because the court has construed all evidence in favor of Mr. Smith, the court has not relied on these affidavits in reaching its ruling here.

First, Mr. Smith stood in the parking space while Ms. Hutton and Ms. Lasissi went to the apartment to retrieve Ms. Lasissi's car key. Next, when Ms. Hutton and Ms. Lasissi returned with the key, Mr. Smith left to get Ms. Lasissi's car. Then, Ms. Hutton stood in the parking space in an effort to "hold" it until Mr. Smith returned.

While Ms. Hutton stood in parking spot, Sergeant Marshall, who was off-duty at the time, but still wearing his uniform, tried to park his vehicle in the parking spot. Ms. Hutton refused to move so he could pull in. She and Sergeant Marshall began to argue. Next, Sergeant Marshall saw and flagged down two Atlanta Police Officers, Officer Zorn and Officer Kitcho, who were driving north on Forsyth Street. He told the officers that two women were standing in the street and preventing him from parking his vehicle. The officers told the women that they could not prevent Sergeant Marshall from parking his vehicle in the parking spot, and then left. Mr. Smith was not present during this time.

When no one stood in parking spot, Sergeant Marshall attempted to park there. While he was maneuvering his vehicle, Ms. Hutton jumped into the passenger seat and continued to argue with him. Sergeant Marshall told her to get out of his vehicle. The parties dispute whether Ms. Hutton got out right away, or refused to leave for some period of time. Ms. Hutton ultimately did get out of Sergeant Marshall's vehicle, at which point, Mr. Smith arrived back on the scene.

Mr. Smith, Ms. Hutton, and Ms. Lasissi then walked away from the parking spot and headed toward Mr. Smith and Ms. Hutton's apartment building. As they walked towards the entrance to the building, Officer Zorn and Officer Kitcho arrived back on the scene. Although the parties dispute what happened next, the court must accept Mr. Smith's version of events to the extent that he is not contradicted by the record.

Mr. Smith says that he never resisted arrest or Officer Zorn's instructions. Instead, he says that the events unfolded as follows: As Mr. Smith, Ms. Hutton, and Ms. Lasissi walked towards the apartment building, Officer Zorn and Officer Kitcho approached Mr. Smith. Mr. Smith then asked the officers, in a calm manner, what was going on. He did not yell or threaten the officers or make any other physically threatening or defensive gesture. The first thing that Officer Zorn did was handcuff Mr. Smith with his arms behind his back. Mr. Smith did not resist, and followed the officers' commands at all times. During this time Ms. Lasissi repeatedly told the officers that Mr. Smith was not involved in the parking spot dispute, and Mr. Smith repeatedly asked what was going on. The officers ordered Mr. Smith to stand with his back against the wall of the building. Then, Officer Zorn, suddenly and without warning grabbed Mr. Smith from behind, flipped him over, and violently threw him on the sidewalk while he was wearing handcuffs. Mr. Smith was rendered

unconscious by the fall, and after regaining consciousness experienced pain and numbness. Then Officer Zorn arrested Mr. Smith for public drunkenness and obstruction, and had him transported to the Fulton County Jail, but did not administer an alcohol test.[5]

As is happening more often in cases of this type, there is a video of these events which was recorded by a security camera at the Healy Building. The video

---

[5]Because the court must make all reasonable inferences in favor of Mr. Smith's version of events, it relies upon his account, except where contradicted by other evidence. However, in the interest of completeness, this Order should reflect that Defendants describe the events leading to Mr. Smith's arrest quite differently. They say that Officer Zorn attempted to question Ms. Hutton about her actions and Mr. Smith jumped between Officer Zorn and Ms. Hutton. Mr. Smith took a defensive position between the two and ignored Officer Zorn's commands to move out of the way. Officer Zorn told Mr. Smith that he was obstructing his questioning of Ms. Hutton and then told Mr. Smith that he was under arrest. He instructed Mr. Smith to put his hands behind his back, and walked him to the wall of a nearby building. Officer Zorn attempted to handcuff Mr. Smith, but he resisted. Mr. Smith twice tried to spin around and face Officer Zorn, and Officer Zorn believed that he would become more aggressive. Therefore, Officer Zorn hand-checked Mr. Smith against the wall every time he attempted to spin free. He was able to get one cuff onto Mr. Smith but not the other, so he told him that he would spray him with pepper spray if he did not comply. Officer Kitcho went over to assist Officer Zorn and together, they were able to place handcuffs on Mr. Smith. Next, Officer Zorn attempted to look into Mr. Smith's pockets for identification. At this time, Mr. Smith began to resist again, and spun quickly around toward Officer Zorn. Officer Zorn attempted again to control Mr. Smith. The two struggled, during which time Officer Zorn smelled alcohol on Mr. Smith's breath. During the struggle they both fell to the pavement, and Mr. Smith was injured. Mr. Smith was subsequently charged with obstruction under O.C.G.A. § 16-10-24(a) and public drunkenness under O.C.G.A. § 16-11-41.

does not resolve all of the factual disputes between the parties, because it is shot from afar, there is no sound, and the quality sometimes makes it difficult to discern which version is most accurate. The video best depicts the dispute over the parking space, but it provides a less clear view of the interaction between Mr. Smith and the police officers. The video reveals the following: Mr. Smith arrived back at the scene as Ms. Hutton was getting out of Sergeant Marshall's vehicle. (Healy Security Video 15:07.) As Mr. Smith, Ms. Hutton, and Ms. Lasissi walked towards the apartment building, Officer Zorn and Officer Kitcho approached the group from the opposite direction. The five met in front of what appears to be an entryway into a building. Mr. Smith placed himself very close to Ms. Hutton, so that she was between him and the wall. (Healy Security Video 15:43.) A few moments later, Ms. Hutton steps into the entryway of building—and out of view of the camera—and Mr. Smith remains, at least for a few moments, between her and the police. (Healy Security Video 15:50.) Shortly thereafter, everyone—Ms. Hutton, Mr. Smith, Officer Zorn, Officer Kitcho, and Sergeant Marshall—except for Ms. Lasissi goes off camera by moving into the entryway of the building. (Healy Security Video 16:08.) One officer comes back into view slightly less than a minute later. (Healy Security Video 16:52.) But Mr. Smith does not reappear until over a minute and half has passed. (Healy Security Video 17:42.)

When Mr. Smith comes back into view, he appears to be escorted by an officer who is directing him to stand near the building wall. (Healy Security Video 17:46.) As discussed, the parties dispute when and how Mr. Smith was placed in handcuffs, and the quality of the video obscures the actual handcuffing of Mr. Smith. As Mr. Smith stands near the wall, an officer stands nearby. The video shows some movement by Mr. Smith as well as the officer during approximately the next minute and a half. (Healy Security Video 17:46-19:24.) Finally, the video shows Officer Zorn approach Mr. Smith, place his hands on Mr. Smith's body in some manner, and shows Mr. Smith responding to this touch by moving his body away from Officer Zorn. (Healy Security Video 19:35-40.) Officer Zorn responds to Mr. Smith's movement by placing both of this hands on Mr. Smith's upper body. (Healy Security Video 19:39-40.) Next, Officer Zorn begins to struggle with Mr. Smith, who was handcuffed, and ultimately pulls Mr. Smith down to the pavement with some force. (Healy Security Video 19:37-57.) Officer Zorn also fell to the ground. (Id.)

The parties do not dispute that Mr. Smith was rendered unconscious from the fall to the pavement. An ambulance was summoned to the scene. Mr. Smith was treated and a bandage was applied to a cut on his head, but he was not taken to the hospital. Mr. Smith was then transported to the Fulton County Jail were he was

charged with Obstruction under O.C.G.A. § 16-10-24(a) and Public Drunkenness under O.C.G.A. § 16-11-41.

On August 14, 2008, Mr. Smith filed this action. He alleges that he suffered severe injuries as a result of the actions of the Defendants, including a "laceration and edema on his scalp and broken vertebra in his neck." (Compl. ¶ 20.) Therefore, he has brought various federal and state law claims arising from his arrest and injury. The Defendants have moved for summary judgment as to all of Mr. Smith's claims. The City, Officer Zorn, and Officer Kitcho (referred to in the Complaint as Officer Doe) filed one Motion, and Fulton County and Sergeant Marshall filed another.

## II. Claims

As set forth above, Mr. Smith originally brought suit against the City, Officer Zorn, Officer Kitcho, Fulton County and Sergeant Marshall. He has made clear, however, that he has abandoned certain claims against certain Defendants. In Response the Motion for Summary Judgment filed by the City, Officer Zorn, and Officer Kitcho, Mr. Smith he has stated that he:

> does not oppose Defendants motion for summary judgment as to the Plaintiff's claims against the Defendant City of Atlanta, and does not oppose the Defendant's motion as to the Plaintiff's official capacity claims against Defendant Zorn. . . .

Additionally, the Plaintiff will not seek to amend his complaint to add Atlanta police officer Kitcho as a party Defendant to this action. Therefore, Plaintiff does not oppose Defendant Zorn's motion for summary judgment as to Plaintiff's conspiracy claims against him under 42 USCA § 1983. Finally, the Plaintiff will not oppose Defendant's motion for summary judgment with respect to his negligence per se claims alleging violation[s] of the Georgia Constitution.

(Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 11-12.)

In response to the second Motion for Summary Judgment, Mr. Smith stated that he "does not oppose the motion for summary judgment filed by Defendants Fulton County, Georgia and Stanley Marshall." (Pl.'s Resp. to Defs.' Fulton County, Georgia and Stanley Marshall's Mot. for Summ. J. 3.)

Mr. Smith has affirmatively stated that he no longer wishes to pursue the claims for which he does not oppose summary judgment. In both of Mr. Smith's Responses, he has stated that his counsel attempted to reach defense counsel in order to dismiss these claims. (See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 12 n.2) ("counsel points out that he attempted to contact defense counsel repeatedly after the close of discovery to notify him that he would agree to dismiss these claims"); (Pl.'s Resp. to Defs.' Fulton County, Georgia and Stanley Marshall's Mot. for Summ. J. 3) ("the undersigned attempted to contact counsel for these Defendants on a number of occasions to inform them that he would agree to a voluntary dismissal"). Therefore, because Mr. Smith has made clear that he no longer wishes

to pursue these claims, they are deemed abandoned.  Accordingly, Defendants the City, Officer Kitcho, Sergeant Marshall, and Fulton County are DISMISSED from this action, and summary judgment is GRANTED in their favor.  Thus, the only claims still pending before the court are Mr. Smith's federal and state law claims against Officer Zorn.

## III.    Legal Standard

Summary judgment is appropriate only when the pleadings and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2).  A dispute over a fact will preclude summary judgment if the dispute "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

Although in considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," id. at 255, the nonmovant must do more than "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Indeed, the nonmovant must present affirmative evidence beyond mere allegations to show that a genuine issue of

material fact does exist.  <u>Anderson</u>, 477 U.S. at 256-57.  Furthermore, the court must evaluate the evidence "through the prism of the substantive evidentiary burden" at trial.  <u>Anderson</u>, 477 U.S. at 254.

## IV.   **Federal Claims**

In his Complaint, Mr. Smith alleges two violations of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983:  (1) an unlawful arrest, and (2) use of excessive force.  Officer Zorn argues that he is entitled to summary judgment as to both claims because there was no constitutional violation, and because, in any event, he is entitled to qualified immunity.

In civil rights actions brought under Section 1983, the doctrine of "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations and internal quotations omitted).  Therefore, qualified

immunity is "an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial."  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  <u>Lee</u>, 284 F.3d at 1194.  Here, there is no dispute that Officer Zorn was acting within the scope of his discretionary authority.

"'Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'"  <u>Crenshaw v. Lister</u>, 556 F.3d 1283, 1290 (11th Cir. 2009) (quoting <u>Lee</u>, 284 F.3d at 1194).  In evaluating whether the plaintiff has met his burden, two inquires are required.  "'The threshold inquiry . . . is whether [the] plaintiff's allegations, if true, establish a constitutional violation.'"  <u>Vinyard</u>, 311 F.3d at 1346 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002)).  Then, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next sequential step is to ask whether the right was clearly established.'"  <u>Id.</u> (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).[6]

---

[6]The Supreme Court has recently held that lower courts are no longer required to address these questions in this specific order, although it recognized that it is "often beneficial" to do so.  <u>Pearson v. Callahan</u>, --- U.S. ----, 129 S. Ct.

## A.    False Arrest

Mr. Smith was arrested, without a warrant, for allegedly violating, O.C.G.A. § 16-10-24(a) which provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor," and O.C.G.A. § 16-11-41(a) which states that:

> A person who shall be and appear in an intoxicated condition in any public place or within the curtilage of any private residence not his own other than by invitation of the owner or lawful occupant, which condition is made manifest by boisterousness, by indecent condition or act, or by vulgar, profane, loud, or unbecoming language, is guilty of a misdemeanor.

The Fourth Amendment requires that a warrantless arrest be supported by probable cause.  See, e.g., Rodriguez v. Farrell, 280 F.3d 1341, 1345 (11th Cir. 2002); see also Beck v. Ohio, 379 U.S. 89, 91 (1964).  Probable cause to arrest exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [a suspect] had committed or was committing an offense." Beck, 379 U.S. at 91.  Probable cause requires "less than evidence which would justify condemnation."  Illinois v. Gates, 462 U.S. 213, 235 (1983); see also Kelly v. Serna, 87 F.3d 1235, 1241 (11th Cir. 1996) ("There is a substantial difference between the

_____

808, 818 (2009).

quantum of proof necessary to constitute sufficient evidence to support a conviction and that necessary to establish probable cause.").  Finally, it should be determined by considering the "totality of the circumstances."  <u>Davis v. Williams</u>, 451 F.3d 759, 762 (11th Cir. 2006).

> In the context of a [§ 1983] claim for false arrest, an officer is entitled to qualified immunity where that officer had 'arguable probable cause' to effect the arrest, that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiff.

<u>Id.</u> at 762-63 (quoting <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004)).

Officer Zorn asserts as to this claim that there was, at a minimum, arguable probable cause to arrest Mr. Smith, and therefore, he is entitled to summary judgment against the claim of false arrest.  Mr. Smith counters that arguable probable cause does not exist because "he was not intoxicated, and . . . he did not resist or impede the officer's action in any way, or at any time during the encounter."  (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 20.)

At the summary judgment stage, the court is bound to construe all facts and inferences in the light most favorable to the nonmoving party, and "when conflicts arise between the facts evidenced by the parties, [to] credit the nonmoving party's

*version*."[7]  Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005).  But here, there is

also video evidence, and the video evidence contradicts at least part of Mr. Smith's

story.  "When opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Therefore, the court

will accept Mr. Smith's version of the facts, unless they are contradicted by video

evidence.

Mr. Smith claims that he never blocked or hindered Officer Zorn's access to

Ms. Hutton, but the video shows that he positioned himself, at least twice, in

between Ms. Hutton and the police.  First, as the police approached the group, Mr.

Smith reached out to Ms. Hutton, directing her closest to him, and him closest to the

officers.  (Healy Security Video 15:37-42.)  Moments later, Ms. Hutton is seen

entering the entryway of the building while Mr. Smith stands between her and the

police.  (Healy Security Video 15:52.)

---

[7]Again, Officer Zorn describes Mr. Smith as instantly and continually
resistant to his efforts to question Ms. Hutton about jumping into Sergeant
Marshall's car during the parking dispute, and also resistant to his efforts to
arrest Mr. Smith.  (City Defs.' Br. in Supp. of Mot. for Summ. J. 3.)  Mr. Smith
maintains that he never hindered or blocked access to Ms. Hutton and that he
followed the officer's commands at all  times.  (Pl.'s Mem. in Opp'n to Def.'s Mot.
for Summ. J. 6-7.)

Thus the court will consider the fact that Mr. Smith did position himself to some extent between Ms. Hutton and the police when the police attempted to ask questions about the parking dispute. <u>See</u> <u>Scott</u>, 550 U.S. at 380. The video, however, provides no evidence of what was said during this time, nor does it provide additional context. Therefore, for the purpose of summary judgment, the court accepts Mr. Smith's description of his calm demeanor and his assertions that he spoke to the officers in a calm manner, and did not yell or threaten them.

The court concludes that Officer Zorn had an arguable basis to believe that Mr. Smith had committed the crime of obstruction, that is, that he "knowingly and willfully obstruct[ed] or hinder[ed] a[] law enforcement officer in the lawful discharge of his official duties." O.C.G.A. § 16-10-24(a). No party disputes that Officer Zorn was acting pursuant to the lawful discharge of his official duties when he sought to ask questions about Sergeant Marshall's allegation that Ms. Hutton jumped into his vehicle. By positioning himself so as to block or hinder access to Ms. Hutton, Mr. Smith created arguable probable cause to arrest him for obstruction. <u>See</u> <u>Weidmann v. State</u>, 222 Ga. App. 796, 797, 476 S.E.2d 18, 20 (1996) (explaining that "[t]he statute was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties," and providing such examples as

lying to the police or flight); <u>Stryker v. State</u>, 297 Ga. App. 493, 494-95, 677 S.E.2d 680, 682 (2009) (explaining that O.C.G.A. § 16-10-24(a) does not contain the elements of forcible resistance or threat of violence and disapproving of previous cases that relied on earlier version of the statue).[8]

"[B]ecause there was no constitutional violation, [the court] need not address whether the constitutional right at issue was clearly established." <u>Crenshaw</u>, 556 F.3d at 1293. Therefore, Officer Zorn is entitled to the defense of qualified immunity and his Motion for Summary Judgment is GRANTED.

### B. Excessive Force

Officer Zorn also seeks summary judgment as to Mr. Smith's excessive force claim. He contends that the amount of force he exerted against Mr. Smith was reasonable under the circumstances.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." <u>Lee</u>, 284 F.3d at 1197. But, the Eleventh Circuit has repeatedly emphasized that, "Fourth Amendment jurisprudence has long recognized that the

---

[8]Although Mr. Smith was arrested for obstruction and for public drunkenness, the court need only address the existence of probable cause for obstruction. "If there is probable cause for one charge, the arrest was proper." <u>Williams v. City of Homestead</u>, 206 F. App'x 886, 887 n.1 (11th Cir. 2006).

right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Vinyard, 311 F.3d at 1347 (citation and internal quotations omitted); see also e.g., Crenshaw, 556 F.3d 1290; McCollough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009).

To determine if the force used to effect the arrest of Mr. Smith was excessive, the Fourth Amendment's "objective reasonableness" standard supplies the test.[9] Crenshaw, 556 F.3d at 1290. Considering "'whether the force used . . . is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). The analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers

---

[9]Mr. Smith has mentioned the Fourteenth Amendment in connection with his Fourth Amendment excessive force claim. (See Compl. ¶ 28.) Officer Zorn argues that an excessive force claim is properly considered under the Fourth Amendment, and Mr. Smith has not set forth a Fourteenth Amendment claim in his Complaint. The court agrees that Mr. Smith's excessive force claim is governed by the Fourth Amendment, see Graham v. Connor, 490 U.S. 386, 396 (1989), and that he has not set forth a separate Fourteenth Amendment claim in his Complaint.

or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

A mechanical application of factors, however, is not possible. See Scott, 550 U.S. at 383. Instead, a court must reach its conclusion "on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,'" Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting Graham, 490 U.S. at 394).

First, the crimes for which Mr. Smith was arrested—obstruction and public drunkenness—are misdemeanors, and therefore, not severe crimes. Accordingly, the first Graham factor weighs in Mr. Smith's favor.

The question of whether Mr. Smith was actively resisting or posing a physical threat to the officers is heavily disputed. Mr. Smith alleges that he "remained with his back to the wall at all times," and that Officer Zorn "suddenly and without warning grabbed Mr. Smith from behind[,] flipped him over and violently threw him down onto the concrete sidewalk." (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 19, 9.) Officer Zorn argues that while he was attempting to search Mr. Smith's pocket, Mr. Smith "renewed his resistance and spun quickly around," and then while "Officer Zorn tried to control [Mr. Smith's] resistance[,] [t]hey struggled and both ended up on the pavement." (City Defs.' Br. in Supp. of Mot. for Summ.

J. 4.)  Ordinarily, the court would be bound to accept Mr. Smith's version of the facts at the summary judgment stage.  But here, there is a video of the incident as well. See Scott, 550 U.S. at 380-81.

The video does not support Mr. Smith's version of the facts.  Mr. Smith claims that he was at all times compliant, standing with his back against the wall. But the video shows that before Officer Zorn pulled him to the ground, Mr. Smith was not simply standing up against the wall.  The video shows that before Officer Zorn put his hands on Mr. Smith, Mr. Smith was moving and turning away from the officers. (Healy Security Video 19:23-28.)  Mr. Smith also claims that Officer Zorn's actions were sudden, and without warning.  But, the video does not show that Officer Zorn just suddenly grabbed Mr. Smith and threw him to the ground. The video shows Officer Zorn placing his hands upon Mr. Smith, Mr. Smith attempting to move or shift away, and then, in response to Mr. Smith's movement, Officer Zorn applying the additional force that ultimately pulled both Mr. Smith and Officer Zorn to the ground.  (Healy Security Video 19:35-49.)

On the other hand, while the video does not contradict Officer Zorn's version of the facts, the quality of the video makes it impossible to confirm his version of the events.  Based upon the undisputed record before it, it appears that Mr. Smith, while in handcuffs, was being, to some extent, noncompliant and resisting, and that

then Officer Zorn applied enough force to cause both Mr. Smith and Officer Zorn to fall to the pavement.

For this reason, this case is differentiated from those in which police officers applied excessive force to a fully subdued, nonresisting arrestee, and Mr. Smith's reliance upon those cases is not persuasive. See Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000) (excessive force against a handcuffed plaintiff who was not resisting when the police kicked him in the ribs and beat his head against the ground); Lee, 284 F.3d at 1198 (excessive force to slam a handcuffed plaintiff's head onto the trunk of a car when she was not resisting); Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (single punch to the stomach excessive force when applied to a plaintiff who neither resisted nor posed a danger to an officer). The facts here are distinguishable because the video shows that Mr. Smith was neither fully subdued nor compliant. See Galvez v. Bruce, 552 F.3d 1238, 1244 n.6 (11th Cir. 2008) (explaining that if an arrestee is not fully secured, case law concerning nonresistant fully secured arrestees does not control).

Because Mr. Smith was resisting Officer Zorn's attempts to subdue him, Officer Zorn was justified in applying some force. See, e.g., Rodriguez, 280 F.3d at 1351 (recognizing "that the typical arrest involves some force and injury"). The court cannot conclude that Officer Zorn's actions in struggling with Mr. Smith and

pushing him to the ground, in this case, were constitutionally excessive. Officer Zorn's actions were made in response to resistance by Mr. Smith, and the force ceased the moment Mr. Smith stopped resisting. While it is true that Mr. Smith's alleged crimes were not serious and he was handcuffed, Mr. Smith was still resisting, and the force utilized was only applied in order to subdue him. There is no dispute that after Officer Zorn pulled Mr. Smith the ground, no additional force was applied to him.

The amount of force applied here has been described as de minimis in previous cases, and the Eleventh Circuit holds that, "the application of de minimis force as needed to effect the arrest, without more, will not support a claim for excessive force." Williams v. Sirmons, 307 F. A'ppx 354, 360 (11th Cir. 2009) (citing Nolin v. Isbell, 207 F.3d at 1253 (11th Cir. 2000)). In past excessive force cases, the Eleventh Circuit has determined that the following uses of force were de minimis: pushing a handcuffed arrestee up against a wall because the arrestee spoke after being told to "shut up," Post, 7 F.3d at 1556, 1560; grabbing a seven and a half months pregnant woman, who was resisting arrest, from behind, pulling her to the ground, and then putting weight and a knee into her back in order to handcuff her, Williams, 307 F. App'x at 361; slamming a suspect against a wall and kicking his legs apart without provocation, Jones v. City of Dothan, 121 F.3d 1456, 1458 (11th

Cir. 1997); grabbing an arrestee's arm and twisting and jerking it high to the shoulder as he fell to his knees screaming, <u>Rodriguez</u>, 280 F.3d at 1352; and grabbing an arrestee from behind, shoving him against a vehicle, pushing a knee into his back and his head against a van and searching his groin in an uncomfortable manner, <u>Nolin</u>, 207 F.3d at 1258 n.4.

The court acknowledges that this case is arguably distinguishable from those set out above, because Mr. Smith alleges serious injuries, and in those de minimis cases, the courts found that the injury inflicted was minimal.[10] Specifically, in his Complaint and his Response to Defendants' Statement of Material Facts, Mr. Smith alleges that he broke two vertebrae in his neck which have continued to cause him pain and suffering. Mr. Smith has not pointed the court to any actual evidence, beyond the allegations, that Officer Zorn's actions broke two of Mr. Smith's vertebrae. In his Response he cites to his wife's deposition. On the pages to which he directs the court's attention, Ms. Hutton explains that Mr. Smith continually complains and "hurts a lot," but that when she tells him to go to the doctor, he "doesn't do anything," and she "can't make him go to the doctor." (Dep. of Sean Hutton, Feb. 18, 2009, at 66-67.) This does not provide evidence of broken vertebrae.

---

[10]The injury was not considered minimal in <u>Rodriguez</u>, however, the court determined that was not legally significant because the force aggravated a preexisting condition. <u>Rodriguez</u>, 280 F.3d at 1352.

The record reflects that an ambulance was called to the scene because Mr. Smith was initially unconscious, however, after treating him for a laceration on his head, he was released to police custody. This type of minimal injury is more typical of de minims cases. See Rodriguez, 280 F.3d at 1352. If there is record evidence that Mr. Smith did break two vertebrae as a result of this incident, he should have specifically directed the court's attention to it. In an abundance of caution, the court accepts Mr. Smith's contention that he has suffered two broken vertebrae and continues to suffer pain.

However, the court need not find that the injury was de minimis, in order to determine that the force was reasonable. See Scott, 550 U.S. at 383 (explaining that for all excessive force cases, "in the end we must still slosh our way through the factbound morass of 'reasonableness.'") Under the totality of the circumstances here, the court finds that the force applied by Officer Zorn was reasonable. While it is true that Mr. Smith's alleged crimes were not serious and he was in handcuffs, Mr. Smith was still resisting. What is more, the force utilized by Officer Zorn was applied in the heat of the moment, and only in order to subdue a resisting arrestee; no additional force was applied once Mr. Smith was secured on the ground. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation and

internal quotations omitted). That is because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97.

Officer Zorn is entitled to qualified immunity, in any event, because Mr. Smith has not established that Officer Zorn's conduct violated a clearly established constitutional right. See Crenshaw, 556 F.3d at 1290. That is because "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 199 (citation and internal quotation omitted).

The issue for the court is whether the law was clearly established at the time of Officer Zorn's conduct so that he would have known that he was violating Mr. Smith's right to be free from excessive force. "For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in

the defendant's place, that what he is doing violates federal law." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 926 (11th Cir. 2000). Therefore, "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." <u>Id.</u>

Mr. Smith only directs the court to cases in which the Eleventh Circuit has held that excessive force was used against a fully subdued, non resistant, arrestee. But, as discussed, the video demonstrates that Mr. Smith was not fully compliant, and supports Officer Zorn's contention that he was resisting Officer Zorn's control. Therefore, these cases do not apply to Mr. Smith.

Mr. Smith does not cite any cases that are on point, or materially similar to the situation here. That is, he has provided no authority that stands for the proposition that forcefully moving a handcuffed, but resisting, arrestee to the pavement is excessive force. Nor is this a situation where "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw, [so that] the official is not entitled to the defense of qualified immunity." <u>Id.</u> (citation and internal quotations omitted). Therefore, because the court finds that Officer Zorn's use of force was reasonable under the circumstances, and that he did not violate a clearly established federal right in any event, Officer Zorn is

entitled to the defense of qualified immunity, and the court GRANTS his Motion for Summary Judgment.

## V.    State Law Claims

The court has granted summary judgment for Defendants for all of Mr. Smith's federal claims.    Accordingly, federal jurisdiction is absent as to the remaining claims in this lawsuit and the court declines to exercise supplemental jurisdiction.  28 U.S.C. § 1367; <u>Mergens v. Dreyfoos</u>, 166 F.3d 1114, 1119 (11th Cir. 1999) ("[I]f the federal claims are dismissed prior to trial, [<u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966)] strongly encourages or even requires dismissal of state claims.") (citation and internal quotations omitted);  <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe County</u>, 402 F.3d 1092, 1123 (11th Cir. 2005).

## VI.   Summary

Defendants Fulton County, Sergeant Marshall, the City, and  Officer Kitcho are DISMISSED because Mr. Smith has abandoned his claims against them.  The Motion for Summary Judgment filed by the City, Officer Zorn, and Officer Kitcho [Doc. No. 38], is GRANTED IN PART for all federal claims against Officer Zorn and all abandoned claims; all state law claims against Officer Zorn are DISMISSED WITHOUT PREJUDICE.  The Motion for Leave to File Excess Pages [Doc. No. 44] in GRANTED.  Mr. Smith's Motion for Leave to File Excess Pages [Doc. No. 48] is

GRANTED. The Motion for Summary Judgment filed by Fulton County and

Sergeant Marshall [Doc. No. 47] is GRANTED insofar as Mr. Smith has abandoned

the claims asserted against these parties.

IT IS SO ORDERED, this 19th day of August, 2009.


s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE